Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 10, 2021

**2021 CO 29**

**No. 19SC975, *People v. Baker*—Criminal Justice—Securities Regulation—
Expert Witness Testimony.**

In this prosecution for securities fraud and theft, the supreme court addresses whether the trial court erred in admitting expert testimony of the Deputy Commissioner of the Colorado Division of Securities, in which the Deputy Commissioner opined, among other things, that the defendant's alleged misstatements and omissions were material.

The court now concludes that, on the facts of this case, the trial court erred in admitting the Deputy Commissioner's testimony because she testified in such a way as to opine that certain disputed facts were true and her testimony involved weighing the evidence and making credibility determinations, which are matters solely within the jury's province.  The court further concludes that the error in admitting this testimony was not harmless and thus constitutes reversible error.

Accordingly, the court affirms the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 29

**Supreme Court Case No. 19SC975**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA1545

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Karl Christopher Baker.

**Judgment Affirmed**
*en banc*
May 10, 2021

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Brittany L. Limes, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Rachel K. Mercer, Deputy Public Defender
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case, like *Lawrence v. People*, 2021 CO 28, __ P.3d __, which we are also announcing today, requires us to explore the limits of expert testimony offered by high-level officials (or former officials) of the Colorado Division of Securities in a securities fraud and theft prosecution. Specifically, here, we must decide whether the admission of a deputy securities commissioner's expert testimony that defendant Karl Christopher Baker's misstatements and omissions were material was reversible error.[1]

¶2 Because (1) in presenting such opinions, the deputy commissioner also opined that certain disputed facts were true; (2) such testimony involved weighing the evidence and making credibility determinations, which are matters solely within the jury's province; and (3) in our view, the error in admitting such testimony was not harmless, we agree with the court of appeals division below that the admission of this testimony was reversible error.

¶3 Accordingly, we affirm the division's judgment.

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the deputy securities commissioner's expert testimony that the defendant's misstatements and omissions were material was reversible error.

## I. Facts and Procedural History

¶4 Baker and his business partner sought investors for a company called Aviara Capital Partners, LLC. According to promotional materials that Baker provided to potential investors, investment money would be used to purchase distressed banks that were being shut down and were under the control of the Federal Deposit Insurance Corporation ("FDIC"). In conjunction with the purchase of the distressed banks, Aviara would operate a "distressed assets fund" to purchase the assets of such banks. Aviara would then acquire additional banks under a business plan by which Aviara and its investors would collectively own eighty percent of the banks, while bank management, directors, advisors, and employees would own the other twenty percent.

¶5 In the course of soliciting potential investors, Baker spoke, independently, with the purported victims in this case, Donna and Lyal Taylor, Dr. Alan Ng, and Stanley Douglas. In addition to providing the above-described promotional materials to these potential investors, Baker allegedly told them, among other things, that (1) he had lined up "Class A" investors who had millions of dollars to invest and he was looking for smaller "Class B" investors; (2) the "Class B" investors' money would be held in an escrow or "trust" account until the "Class A" investors had invested and Aviara was ready to purchase a bank; (3) the "Class B" investors' money would go toward Aviara, the purchase of distressed

banks, or the asset fund; (4) neither Baker nor other corporate officers would take a salary or otherwise pay themselves out of investment funds but rather would be paid only once Aviara was operational and profitable; (5) the investors would get their principal back quickly (e.g., the Taylors within three to four months, and Ng and Douglas within one year); and (6) the amount of money that they could lose was capped (at $30,000 for the Taylors, a lack of profit for Ng, and twenty-five percent of his investment for Douglas).

¶6 Purportedly in reliance on these representations, the Taylors ultimately invested $150,000, Ng invested $50,000, and Douglas invested $300,000. In exchange for their investments, each of them received a certificate stating that they had obtained a certain number of units of interest.

¶7 The alleged victims' investments did not work out as they claim to have been promised, and a grand jury subsequently indicted Baker on, among other charges, three counts of securities fraud under sections 11-51-501(1)(b) and 11-51-603(1), C.R.S. (2020) (based on Baker's allegedly untrue statements or omissions of material facts), one count of securities fraud under sections 11-51-501(1)(c) and 11-51-603(1) (based on Baker having allegedly engaged in acts operating as a fraud or deceit on other persons), and three counts of theft under section 18-4-401, C.R.S. (2020). The indictment alleged that (1) Baker had concealed from the victims that their investment money was not going toward

4

Aviara or the purchase of distressed banks but rather would go toward personal and non-investment related expenses of Baker and others; (2) the alleged victims' money was not placed into an escrow or "trust" account but was placed into Aviara's operating accounts, after which the majority of the money was used for non-investment related expenses; (3) contrary to Baker's purported representations, he took sums of the investment money for personal use and for non-investment related expenses; (4) no "Class A" investors had ever been identified; and (5) the investors had received no return of their principal and no profit at any time.

¶8    The matter proceeded, and prior to trial, the People identified Lillian Alves, then the Deputy Securities Commissioner for Colorado, as an expert in the area of securities and the Colorado Securities Act (the "Act"). Thereafter, Baker filed a motion *in limine* to exclude this proffered testimony. In his motion, Baker noted that the Deputy Commissioner apparently planned to testify that certain of Baker's alleged statements to the purported victims constituted material misstatements and omissions and that such statements were misleading. In Baker's view, such testimony would usurp the functions of both the judge and the jury.

¶9    The trial court does not appear to have addressed Baker's motion prior to trial, but it did so at trial, before the prosecution called Deputy Commissioner Alves to testify. Ruling from the bench, the court denied Baker's motion. In so

5

ruling, the court began by noting that it had reviewed the applicable case law and that, in one case, a division of the court of appeals had observed that the issue of whether testimony like that at issue would confuse the jury regarding what law to follow (i.e., the judge's or the expert's) was "kind of a close question." Nonetheless, the court found the analyses of those divisions that had admitted similar testimony persuasive and thus decided to admit the proffered expert testimony here. The court noted, however, that if any party wished, the court would instruct the jury that in the event of a dispute regarding the applicable law, the jury was to follow the law as set forth in the court's instructions.

¶10 The prosecution then called Deputy Commissioner Alves to the stand. After the prosecution qualified her as an expert in securities and the Act, at Baker's request, the court instructed the jury that if the Deputy Commissioner testified about and the jurors had any questions regarding the law, then they were to be guided by what the court would say about the law in the final jury instructions.

¶11 Deputy Commissioner Alves proceeded to testify regarding the Act, its purposes, the Division of Securities' and her own responsibilities in administering the Act, and securities issuers' responsibility to make full and fair disclosures. The Deputy Commissioner defined "full and fair disclosures" to comprise "all of the information in order to decide whether or not to buy the security," including, if

6

the issuer was a company, information about its financials, its officers, and the officers' backgrounds and track records.

¶12 The Deputy Commissioner then turned to the present case. She began by explaining that the Attorney General's office had contacted her to conduct a review related to Baker and Aviara. She told the jury that she was specifically asked to review some of the discovery and reports in this case in order to determine whether a security was involved and whether Baker had made any material omissions or misstatements in the sale of a security.

¶13 The Deputy Commissioner noted that in carrying out this assignment, she had reviewed a number of interview reports (including reports of interviews of all of the alleged victims, some FDIC witnesses, and another individual involved with Aviara), several statements from Baker (which were not provided to the jury), and financial information compiled by an auditor in the Attorney General's office. In light of what she had reviewed, she initially concluded that the agreements with the investors at issue here constituted investment contracts and therefore securities within the meaning of the Act.

¶14 The Deputy Commissioner then turned to whether Baker had made material misstatements and omissions to the alleged victims in this case. She began by opining that Baker had a duty to disclose material facts truthfully, with "materiality" being defined as "a substantial likelihood that the information

7

would be important to a reasonable investor." She then opined, "Based on my review of what the investors reported in the investigation about what the defendant said to them, I believe that there were a series of facts that they understood that were, in fact, material." She proceeded to describe these purported misstatements and omissions as follows:

- The investors understood that their money would be used to purchase a distressed bank, but "[i]n fact, that was not what happened." Instead, although there were some business expenses (e.g., attorney fees), "[t]he vast majority—or at least half or more went to the defendant and to his colleague. They just took it directly."

- Although Baker had stated to the investors that he had "Class A" investors who were poised to invest imminently, "it did not appear that there were any Class A investors imminent. And that was quite material."

- The investors all understood that "there would be a limitation on how much they could lose," but "in fact, they lost their entire investment."

- The investors "had also been told that they would at least get their principal back within one year. So that is another factor that is material."

- The investors "were told by the defendant that he would not be taking a salary until Aviara was up and running or until it was profitable. When, in fact, the financial information [that the Deputy Commissioner] reviewed

8

indicated that he took the investor proceeds right away and paid himself." And this, too, "was clearly a material fact."

- Baker "had told the investors that these funds would be held in escrow until such time as the bank was to be purchased and/or the Class A investors materialized and were to pay the fund to capitalize the bank," but "[i]n this case there was no escrow account at all. The funds went into an operating account that was then used by the defendant."

¶15 Notably, on cross-examination, defense counsel challenged Deputy Commissioner Alves on a number of her assertions as to what, factually, had occurred. She, however, defended her statements and assumptions. For example, when defense counsel asked whether the documentation that had been given to the investors, including the investors' agreements, mentioned anything about the investor funds being held in escrow, the Deputy Commissioner responded, "No. Again, that was a verbal representation by the defendant." She likewise confirmed that the documentation that had been given to the investors placed no limit on the amounts that the investors could lose. To the contrary, the documentation stated that the investment was going to be "speculative" and "with a high degree of risk" and that the investors "must be able to afford a complete loss of this investment." And after defense counsel pointed out virtually identical language (including typographical errors) in the witness interview reports prepared by an investigator

9

from the Attorney General's office (suggesting that the investigator had merely cut and pasted the witnesses' allegations without capturing what they had actually said), Deputy Commissioner Alves testified that the fact that the investors said the exact same things "suggest[ed] that the statements were consistently spoken by the defendant from investor to investor." She then doubled down on this testimony during re-direct examination, stating, when asked if the existence of some "boilerplate" language had altered her view as to what Baker had said to the investors, "I don't have any reason to believe that that's not what they were told."

¶16 The jury ultimately convicted Baker of, among other things, three counts of securities fraud and three counts of theft, and Baker appealed. On appeal, Baker contended that the trial court had erred in admitting Deputy Commissioner Alves's expert testimony because it was not helpful to the jury, was speculative, misstated the law, and usurped the functions of the judge and jury. *People v. Baker*, 2019 COA 165, ¶ 11, __ P.3d __.

¶17 In a unanimous, published decision, a division of the court of appeals subsequently affirmed in part and reversed in part. As pertinent here, the division agreed with Baker that some of Deputy Commissioner Alves's testimony invaded the province of the jury and, therefore, was improper. *Id.* at ¶¶ 10, 14–21. Specifically, the division observed that in securities fraud cases, an expert witness "can opine on the requirements of securities laws; the meanings of certain

concepts, such as materiality; whether a particular transaction involved a security; and, *if* a certain set of facts is as alleged, whether a particular statement or omission was material, within the meaning of the securities laws." *Id.* at ¶ 16. The division continued, however, that "such an expert should not be allowed to opine on whether the prosecution's factual allegations are true—that is, for example, whether the defendant did or did not say or do something, or whether particular events did or did not occur." *Id.* In the division's view, "[s]uch testimony implicates a weighing of the evidence and determinations of credibility—matters that are for the jury alone to decide." *Id.*

¶18 Applying these principles to this case, the division concluded that the portions of Deputy Commissioner Alves's testimony discussed above were improper for at least two reasons. *Id.* at ¶ 19. First, in testifying as she did, "Alves told the jury what had happened in the case," speaking "as though [the victims'] allegations were true, which suggested that she had drawn her own conclusions about the investors' credibility." *Id.* at ¶ 20. And she did so even though the facts were largely disputed, with Baker's theory of defense being that he never made the alleged statements to the investors. *Id.* Thus, whether the investors were telling the truth was a matter solely for the jury to decide. *Id.*

¶19 Second, the division concluded that Deputy Commissioner Alves's testimony as to whether the alleged statements were material "went too far." *Id.*

11

at ¶ 21. Specifically, the division observed that, although general testimony regarding the types of statements that an investor could find material is acceptable, such testimony is improper when, as here, "it assesses witness testimony, indicates a belief in a particular version of the facts, and then applies the law to those facts to make conclusions reserved for the jury." *Id.*

¶20 Finally, the division concluded that the trial court's error in admitting Deputy Commissioner Alves's above-described testimony was not harmless. *Id.* at ¶ 22. In so concluding, the division noted that in testifying to disputed allegations with authority and as though they were fact, the Deputy Commissioner, by necessary implication, opined that Baker was guilty. *Id.* The division further observed that the danger that the jury had credited the Deputy Commissioner's improper opinions was "especially acute," given that she (1) testified as an expert; (2) worked for the state, was part of the process for selecting cases for enforcement, and was one of the people who decided whether to prosecute criminally; and (3) opined on "technical matters about which the jurors were likely to afford her particular credibility." *Id.* at ¶ 23.

¶21 The People then petitioned for a writ of certiorari, and we granted their petition.

## II. Analysis

¶22 We begin by addressing the People's contentions that Baker did not properly preserve the issues now before us or that he invited the errors about which he complains. Rejecting both contentions, we proceed to consider whether Deputy Commissioner Alves's testimony exceeded the bounds of proper expert testimony under CRE 702 and 704. Concluding that it did, we proceed to consider whether the trial court's error in admitting such testimony was harmless.

### A. Preservation and Invited Error

¶23 The People contend that Baker did not properly preserve his objections to the portions of Deputy Commissioner Alves's testimony at issue and that, in any event, he invited the errors about which he now complains. We reject both contentions.

¶24 As to preservation, the People assert that, although Baker filed a timely motion *in limine* concerning Deputy Commissioner Alves's testimony, he did not renew his objections to that testimony at the time the Deputy Commissioner testified.

¶25 CRE 103(a)(2), however, expressly states, "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Here, Baker filed a timely motion *in limine* raising precisely the same

13

issues that he raised on appeal, and the trial court subsequently addressed and ruled on that motion during trial. Accordingly, Baker properly preserved the issues now before us.

¶26 As for invited error, the People contend that Baker, on cross-examination, elicited the portions of Deputy Commissioner Alves's testimony regarding the facts and witness credibility, and, therefore, he invited the errors about which he now complains.

¶27 We have long made clear that "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts." *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989). Here, we perceive no basis for any assertion of invited error. As described above, the People, and not Baker, elicited the portions of Deputy Commissioner Alves's testimony at issue. Specifically, after asking Deputy Commissioner Alves on direct examination if she had determined whether Baker had made material misstatements and omissions, the People proceeded to have her describe those misstatements and omissions at length, making the factual assertions and determinations about which Baker now complains. Although, to be sure, Baker sought to discredit this testimony on cross-examination, we see nothing in that examination that injected into this case the errors that Baker raised on appeal and continues to assert now.

14

¶28 Accordingly, we deem the issues preserved, reject the People's assertion regarding invited error, and now turn to the merits of Baker's contentions.

## B. Admissibility of Deputy Commissioner Alves's Testimony

¶29 "We review a trial court's admission of expert testimony for an abuse of discretion . . . ." *People v. Rector*, 248 P.3d 1196, 1200 (Colo. 2011). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Jefferson*, 2017 CO 35, ¶ 25, 393 P.3d 493, 498–99.

¶30 CRE 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The focus of a CRE 702 inquiry is on whether the proffered evidence is both reliable and relevant. *People v. Shreck*, 22 P.3d 68, 77 (Colo. 2001). In determining whether the expert testimony at issue is reliable, "a trial court should consider (1) whether the . . . principles as to which the witness is testifying are reasonably reliable, and (2) whether the witness is qualified to opine on such matters." *Id.* In deciding whether the evidence is relevant, the court should consider whether the testimony would be useful to the jury. *Id.* Expert testimony is useful if it "will assist the fact

finder to either understand other evidence or to determine a fact in issue."

*People v. Ramirez*, 155 P.3d 371, 379 (Colo. 2007).

¶31 CRE 704, in turn, provides, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

¶32 In *Rector*, 248 P.3d at 1203, we set forth a number of factors that courts should consider in determining whether opinion testimony is admissible under CRE 704. These factors include, but are not limited to, whether (1) the testimony was clarified on cross-examination; (2) the expert's testimony expressed an opinion of the applicable law or legal standards and thereby usurped the function of the court; (3) the jury was properly instructed on the law and that it could accept or reject the expert's opinion; and (4) the expert opined that the defendant had committed the crime or that there was a particular likelihood that the defendant did so. *Id.*

¶33 Applying these principles, both federal courts and Colorado state appellate courts have uniformly concluded that proffered expert testimony was inadmissible when the expert either opined on whether the prosecution's factual allegations were true, gave opinion testimony that another witness was telling the truth on a specific occasion, or applied the law to the facts in such a way as to suggest that the expert had determined that the defendant was guilty. *See, e.g.,*

*United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (noting that it does not help the jury for an expert to give testimony that merely states legal standards or draws legal conclusions by applying the law at issue to the facts of the case); *United States v. Farrell*, 563 F.3d 364, 377–78 (8th Cir. 2009) (concluding that expert testimony invaded the province of the jury when it amounted to an attempt to express an opinion as to the defendants' guilt, but determining that the erroneous admission of such evidence was harmless error); *United States v. Charley*, 189 F.3d 1251, 1267–68 (10th Cir. 1999) (concluding that expert testimony, based on the statements of the alleged victim, that the crime at issue had occurred was inadmissible because such testimony amounted to mere vouching for the alleged victim's credibility); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) (reversing a securities fraud conviction because an expert's testimony ran afoul of the principle that "expert witnesses may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony," the credibility of witnesses being solely for the jury's determination); *United States v. Harvey*, 405 F. Supp. 3d 667, 672 (S.D. Miss. 2019) (concluding that expert testimony opining, based on materials provided by counsel, that the circumstances alleged in such materials actually occurred is inadmissible); *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 280 (D. Conn. 2017) (observing that an expert "may not simply recite a factual narrative from one party's perspective, granting it credibility, when

17

he has no personal knowledge of the facts addressed"); *People v. Penn*, 2016 CO 32, ¶ 31, 379 P.3d 298, 305 ("We have held that a witness cannot testify that he believes that the defendant committed the crime at issue."); *People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009) ("In Colorado, neither lay nor expert witnesses may give opinion testimony that another witness was telling the truth on a specific occasion."); *People v. Bridges*, 2014 COA 65, ¶ 16, 410 P.3d 512, 514–15 (excluding expert testimony of a forensic interviewer on the ground that his testimony amounted to opinion as to the truthfulness of the alleged child victims); *People v. Lesslie*, 939 P.2d 443, 450 (Colo. App. 1996) ("[A]n expert testifying as to issues of law may not . . . simply tell the jury what result to reach.").

¶34    As these courts have recognized, an expert's opinion as to the truth of the prosecution's allegations implicates the weighing of evidence and matters of witness credibility, which are strictly for the jury's determination. *See also Bridges*, ¶ 11, 410 P.3d at 514 ("[I]t is solely the jury's responsibility to determine whether a particular witness's testimony or statement is truthful."); *People v. Duncan*, 109 P.3d 1044, 1046 (Colo. App. 2004) ("[T]he resolution of inconsistent testimony and determination of the credibility of the witnesses are solely within the province of the jury."). Moreover, an expert's application of the law to the facts that suggests a determination of guilt would run directly afoul of the fourth *Rector* factor discussed above. *See Rector*, 248 P.3d at 1203.

18

¶35 We are persuaded by the reasoning of the foregoing authorities and thus agree with the division that the portions of Deputy Commissioner Alves's testimony at issue were inadmissible.

¶36 Deputy Commissioner Alves repeatedly opined on the truth of the prosecution's factual allegations by speaking as though the allegations against Baker were true and the statements made by the purported victims were accurate. Despite the fact that Baker disputed the allegations against him, Deputy Commissioner Alves did not testify that *if* a certain fact was alleged or true, then it would be material. To the contrary, she testified to the allegations contained in the discovery materials and investigative reports that she had reviewed, opined that Baker had in fact made the misstatements and omissions asserted therein, and went so far as to opine that the statements in the Attorney General's investigator's interview reports accurately reflected what Baker had told the investors. In our view, in so testifying, Deputy Commissioner Alves effectively weighed the evidence, made credibility determinations as to such evidence, and essentially told the jury what had occurred in this case, all of which were matters solely for the jury's determination. And in doing so, the Deputy Commissioner, for all intents and purposes, opined that Baker was guilty of the crimes charged, in contravention of *Rector*'s fourth factor. *See id.*

¶37    Accordingly, we conclude that on the facts presented here, Deputy Commissioner Alves's testimony was inadmissible under CRE 702 and 704. The question thus becomes whether the error in admitting this testimony was nonetheless harmless. We address that issue next.

## C. Harmless Error

¶38    We review preserved non-constitutional errors for harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119; Crim. P. 52(a). Under this standard, we reverse only if the error affected the substantial rights of the parties. *Hagos*, ¶ 12, 288 P.3d at 119; Crim. P. 52(a). In other words, we must reverse if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Hagos*, ¶ 12, 288 P.3d at 119 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)). To determine if that occurred, we look to whether the People have shown that "there is no reasonable possibility that [the error] contributed to the defendant's conviction." *Pernell v. People*, 2018 CO 13, ¶ 22, 411 P.3d 669, 673.

¶39    Here, we believe that the error in admitting the portions of Deputy Commissioner Alves's testimony at issue affected Baker's substantial rights and established a reasonable possibility that the erroneously admitted evidence contributed to Baker's convictions. We reach this conclusion for much the same reasons as the division below.

20

¶40    First, as noted above, Deputy Commissioner Alves relied, in part, on information not known to the jury, thus implying that she knew more about the facts than the jurors. And she proceeded to make factual determinations on disputed matters, relying, at least in part, on this information, thereby suggesting that she had decided, based on her superior knowledge of the facts, that Baker was guilty. In our view, such testimony likely contributed to the jury's verdicts.

¶41    Second, the Deputy Commissioner testified as an expert, and her status in this regard and as a high-level official in the Colorado Securities Division undoubtedly imbued her testimony—including her assessment of disputed facts—with an aura of trustworthiness and reliability. *See People v. Koon*, 724 P.2d 1367, 1371 (Colo. App. 1986) (observing that a therapist's status as an expert witness likely "augmented her [improper] testimony with an aura of trustworthiness and reliability").

¶42    Third, and related to the prior point, Deputy Commissioner Alves testified to technical matters with which the jurors were unlikely to be familiar, and for this reason as well, the jurors were likely to afford her testimony particular weight and credibility. *See id.; see also Venalonzo v. People*, 2017 CO 9, ¶ 50, 388 P.3d 868, 881 (noting that the prosecution's failure to designate a witness as an expert prejudiced the defendant because the expert's "specialized experience, combined with her use of technical terms, imbued her testimony with an air of expertise and may have

led the jury to credit her assessment of the [victims'] credibility over other evidence in the case").

¶43 Finally, Deputy Commissioner Alves worked for the State and indeed told the jury that she was part of the process for selecting cases for enforcement and deciding which cases should be prosecuted criminally. These facts tended to put "the expert's stamp of approval on the government's theory" and thus might well have unduly influenced the jury's assessment of the disputed facts and evidence in this case. *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994).

¶44 For all of these reasons, we perceive, at a minimum, a reasonable possibility that Deputy Commissioner Alves's improper testimony contributed to Baker's securities fraud and theft convictions. Accordingly, we cannot say that the erroneous admission of that testimony was harmless.

## III. Conclusion

¶45 Deputy Commissioner Alves's testimony as to the materiality of Baker's alleged misstatements and omissions rested, to a large extent, on her weighing of disputed evidence and her determinations as to Baker's and the alleged victims' credibility. Because this testimony usurped the jury's proper role, we conclude that the trial court abused its discretion in admitting that testimony. Moreover, on the facts presented here, we cannot say that the admission of this testimony was harmless.

¶46     Accordingly, we affirm the judgment of the division below, and we remand this case for further proceedings consistent with this opinion.