The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jeffrey MINTZ, Defendant–Appellant.

No. 04CA1024.

Colorado Court of Appeals,
Div. I.

Jan. 25, 2007.

Certiorari Denied Aug. 13, 2007.

John W. Suthers, Attorney General, Katherine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Jeffery Mintz, appeals his judgment of conviction for two counts of assault on a child by one in a position of trust, § 18–3–405.3, C.R.S.2006, and two counts of aggravated incest, § 18–6–302, C.R.S.2006, as well as his sentence of forty-eight years to life in prison for those crimes. We affirm the judgment with merger of the convictions, vacate the sentence, and remand with directions.

## I. Background

On Christmas Eve 2002, defendant's ex-wife (mother) was preparing to take her two daughters to visit defendant, their father. Before leaving for the visit, the five-year-old daughter (victim) informed mother defendant had inserted his penis into her vagina on previous visits and had forced her to wash his penis in the shower.

Defendant was then on probation for a previous sexual assault. In response to victim's outcry, mother called defendant's probation officer and his offense-specific treatment provider to find out what she should do. When she could not contact them, she left victim and her sister with defendant and returned home. She then called the police.

The police removed the children from defendant's apartment and started an investigation into the alleged sexual abuse. As part of the investigation, victim participated in two forensic interviews. At the second interview, she stated defendant had penetrated her with his finger and his penis.

The prosecution charged defendant with multiple counts arising out of the alleged abuse. He was convicted of two counts of sexual assault on a child by one in a position of trust and two counts of aggravated incest. The jury found the assaults were not part of a pattern of sexual abuse and acquitted defendant of all other counts.

The court imposed consecutive twenty-four-year sentences for the sexual assault convictions and for the aggravated incest convictions, ordering those two forty-eight-year sentences to be served concurrently.

## II. Expert Testimony

Defendant contends his conviction should be overturned because the trial court allowed the prosecution's expert witness to testify the child victim in this case was telling the truth about being sexually abused. We disagree.

Expert testimony is admissible if the expert's specialized knowledge will assist the jury in understanding the evidence or in determining a fact in issue. CRE 702; *People v. Shreck*, 22 P.3d 68 (Colo.2001); *People v. Pahl*, —— P.3d ——, 2006 WL 3040920 (Colo.App. No. 01CA2020, Aug. 24, 2006). In a sexual assault on a child case, an expert witness cannot give an opinion as to whether a victim is being truthful or untruthful on a specific occasion. *Tevlin v. People*, 715 P.2d 338 (Colo.1986); *People v. Pronovost*, 756 P.2d 387 (Colo.App.1987), *aff'd*, 773 P.2d 555 (Colo.1989).

An expert may testify as to the typical demeanor and behavioral traits displayed by a sexually abused child. *People v. Morrison*, 985 P.2d 1 (Colo.App.1999), *aff'd*, 19 P.3d 668 (Colo.2000); *People v. Pronovost, supra*; *see People v. Fasy*, 829 P.2d 1314 (Colo.1992) (court allowed a psychiatrist to explain the reasons victims of a sexual assault delay in reporting and the typical traits displayed by child suffering from posttraumatic stress disorder); *People v. Lucero*, 724 P.2d 1374 (Colo.App.1986) (permitted expert testimony on what typical incest family was like).

When testifying as to the typical behavioral traits of an abused child, the expert may respond to hypothetical questions involving the facts of the case at hand. *People v. Morrison, supra*. A trial court has broad discretion to determine the admissibility of expert testimony under CRE 702, and the exercise of that discretion will not be overturned on appeal absent an abuse of discretion. *People v. Pahl, supra*, —— P.3d at ——; *see People v. Wilkerson*, 114 P.3d 874 (Colo.2005).

Here, the expert, a doctor, answered a number of hypothetical questions reflecting the facts of the present case. The expert testified about traits and behavior generally

exhibited by children. He did not testify victim exhibited these traits, and he did not offer an opinion about whether victim told the truth about having been abused.

The purposes for which the expert's testimony was admitted in the case have previously been deemed proper. For example, testimony concerning why children lie about abuse, and what problems children have recounting specific instances of past abuse, was found admissible in *People v. Morrison, supra.*

In addition to the expert's testifying in general terms, both the prosecution and the expert made it clear to the jury the expert's testimony pertained to children in general and not victim in particular. At the beginning of her questioning of the expert, the prosecutor stated: "Doctor, I want to start talking about the area of child development, and when I talk about a child in particular today I'm talking about a five-year-old, and I'm asking you questions about five-year-olds in general."

On cross-examination defense counsel asked the expert, "Doctor, is it fair to say that many of your answers are conditional?" The expert responded, "Certainly. We are talking hypothetically."

This evidence was admissible "because the expert testified in general terms [and] did not focus on the truthfulness of the child's statements." *People v. Morrison, supra,* 985 P.2d at 5; *see also People v. Deninger,* 772 P.2d 674 (Colo.App.1989). Thus, the trial court did not abuse its discretion in admitting the expert's testimony.

### III. Evidence of Other Crimes

Defendant contends his conviction should be reversed because the court erred in allowing the jury to hear evidence he was on probation, which, in turn, indicated he had committed other crimes. We disagree.

CRE 404(b) prohibits the admission of evidence of other crimes to prove a person's character "in order to show that he acted in conformity therewith." *See People v. Boykins,* 140 P.3d 87 (Colo.App.2005). Evidence of conduct that does not naturally lead a jury to infer a defendant committed a previous offense is not classified as "other crime" evidence subject to the requirements of CRE 404(b). *People v. St. James,* 75 P.3d 1122 (Colo.App.2002); *People v. Cooper,* 950 P.2d 620 (Colo.App.1997), *rev'd on other grounds,* 973 P.2d 1234 (Colo.1999); *People v. Thiery,* 780 P.2d 8 (Colo.App.1989); *People v. Clark,* 705 P.2d 1017 (Colo.App.1985).

At the time of the offense, defendant was on probation for a sexual assault conviction. As part of his probation, he was assigned a probation officer and an offense-specific treatment provider. The trial court allowed the prosecution and other witnesses to refer to defendant's probation officer as a "court appointed counselor" and his offense-specific treatment provider as a "court appointed therapist." The court required the use of such vocabulary in order to avoid any inference defendant had been involved in other criminal activity that might flow from use of their actual titles.

These witnesses testified mother left messages for them on the day victim first reported being molested, expressing concern for her daughters' safety. Mother testified defendant's "counselor" had the power to suspend his visitation rights. The lead detective on the case testified the "therapist" told defendant not to take showers with his daughters.

Neither the titles given to the witnesses, nor the witnesses' testimony, was covered by CRE 404(b). This evidence did not refer to or implicate defendant's prior conviction.

Because evidence of mother and defendant's divorce was presented at trial, the trial court concluded the jury was likely to infer the counselor and the therapist had been appointed by the court as part of the divorce proceeding, not because defendant was on probation, and mother contacted them because she was a party to the divorce. It was, therefore, reasonable for the trial court to anticipate the jury would conclude the therapist had the authority to suspend defendant's visitation rights and the counselor had the power to instruct defendant not to shower with his daughters because they had been appointed by the court in the divorce proceedings. Contrary to defendant's argu-

ment, a single juror asking whether the jury could assume defendant was in therapy does not indicate the jurors thought defendant had committed other crimes.

Defendant argued at trial mother lied when she reported the abuse. Defendant asserted mother would not have allowed her daughters to go with him if she believed he had molested them. Testimony of the probation officer and treatment provider was relevant to refute this defense. This testimony suggested mother let the children visit defendant because she believed the "counselor" and the "therapist" could help her protect her daughters. Testimony from the probation officer about warnings to defendant to stop showering with his daughters was relevant to show defendant had knowledge such conduct was improper. Using the terms "counselor" and "therapist" allowed relevant evidence to be introduced while minimizing any prejudice to defendant based upon the source of that evidence. *See* CRE 403.

Thus, the trial court did not abuse its discretion by admitting this evidence because it was not "other crimes" evidence subject to CRE 404(b) and it was not likely to distract the jury or "cause overmastering hostility" toward defendant. *People v. St. James, supra*, 75 P.3d at 1125–26.

## IV. Double Jeopardy

Defendant argues his sentence must be vacated because his multiple punishments for sexual assault on a child by one in a position of trust and aggravated incest violate the Double Jeopardy Clauses of the United States and Colorado Constitutions. We agree defendant's two convictions for sexual assault on a child must be merged into a single conviction; the two convictions for aggravated incest must be merged into a single conviction; and defendant must be resentenced.

### A. Standard of Review

■ The Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit multiple punishments under the same statute for the same criminal offense. *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005). However, a defendant may receive multiple punishments for distinct offenses under the same statute. *Quintano v. People*, 105 P.3d 585, 590 (Colo.2005).

The supreme court has addressed the proper standard of review to be applied when analyzing this issue:

Whether or not particular acts were actually committed is obviously a question of fact. But whether different acts could constitute more than one offense and whether sufficient evidence has been produced to support a factual finding of those acts are matters of law. As long as each legally distinct offense has been charged with sufficient specificity to distinguish it from other offenses and the evidence at trial is sufficient to support convictions of each charge, general verdicts of guilt will be adequate to support multiple convictions.

*People v. Abiodun*, 111 P.3d 462, 471 (Colo. 2005) (citations omitted).

### B. Unit of Prosecution

■ To determine whether the Double Jeopardy Clauses permit multiple punishments the court must determine "(1) whether the unit of prosecution prescribed by the legislature permits the charging of multiple offenses; and (2) whether the evidence in support of each offense justifies the charging of distinct offenses." *Quintano v. People, supra*, 105 P.3d at 590.

■ "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses" by establishing whether the conduct consists of one or more violations of a single statutory provision. *Woellhaf v. People, supra*, 105 P.3d at 215. Once the unit of prosecution for an offense is prescribed by the legislature, the court must discern whether the defendant's actions satisfy more than one unit of prosecution, or in other words, whether they are distinct offenses. *Woellhaf v. People, supra*.

In *Woellhaf*, the supreme court determined the unit of prosecution for the crimes of sexual assault on a child under § 18–3–405, C.R.S.2006, and sexual assault on a child by one in a position of trust under § 18–3–

405.3, to be "any sexual contact." The court interpreted the phrase "any sexual contact" as an "unlimited, nonrestrictive phrase that generally encompasses a multitude of types of sexual contacts." *Woellhaf v. People, supra*, 105 P.3d at 216. *Woellhaf* also held this unit of prosecution did not define separate offenses for the different kinds of sexual contact listed in those statutes.

No published decision has addressed what the unit of prosecution is for the crime of aggravated incest under § 18–6–302(1)(a), C.R.S.2006. As pertinent here, this statute prohibits a parent from subjecting his or her child, stepchild, or adopted child to "sexual penetration or sexual intrusion . . . or . . . sexual contact." Although this proscription contains two terms, sexual penetration and sexual intrusion, that do not appear in the sexual assault on a child statute interpreted in *Woellhaf*, the supreme court's analysis of the term "any sexual contact" included acts of sexual penetration and intrusion.

The phrase "sexual penetration or sexual intrusion . . . or . . . sexual contact" is unlimited and nonrestrictive, encompassing a multitude of kinds of sexual contacts. This phrase comprises all possible ways to commit sexual assault, as defined by § 18–3–401, et seq., C.R.S.2006, and is, therefore, functionally equivalent to the phrase "any sexual contact." Thus, under *Woellhaf*, we conclude there is no discernible difference between the two phrases and the unit of prosecution should be the same.

## C. Evidence Supporting Distinct Offenses

 When determining whether a defendant's actions satisfy more than one unit of prosecution, the court looks "to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses." *Quintano v. People, supra*, 105 P.3d at 592. Factors suggesting actions are factually distinct include that the contacts occurred at different locations or times or were the product of new volitional departures. *Woellhaf v. People, supra*. "[T]he defendant's acts of sexual perpetration [cannot] be so close in time, or be so lacking in intervals, that they constitute a

single offense of sexual contact." *Quintano v. People, supra*, 105 P.3d at 592.

 If the court cannot discern from the evidence or the counts whether the acts were separated in time, whether they occurred in different locations, or whether they were the product of new volitional departures, the court must find the acts were not distinct offenses. If the acts are not distinct offenses, they merge into a single conviction. *Woellhaf v. People, supra*.

The victim in *Woellhaf* claimed the defendant had sexually assaulted her ten times, alleging four different kinds of sexual contact: rubbing lotion on her vagina; digital penetration of her vagina; penile penetration of her vagina; and ejaculating on her stomach. The defendant was charged with ten identical counts of sexual assault on a child and ten identical counts of sexual assault on a child by one in a position of trust, alleging only that "sexual contact" occurred during a specified time period.

The jury considered four counts for each offense. The prosecution differentiated between these counts by describing one count of each crime as involving one of the specific kinds of sexual contact the victim had described. This description was provided to the jury without indicating whether any of the counts involved a separate act or incident of sexual assault.

*Quintano* was a companion case to *Woellhaf*, decided on the same day. There, the evidence established five distinct sexual acts occurred in five different places on the same day. In determining three convictions for sexual assault on a child did not violate the proscription against double jeopardy, the supreme court observed:

The record evidences that the defendant had sufficient time to reflect after each encounter. He persisted after the victim admonished him to stop several times. Each incident occurred in a different location, or after the victim had left a location and returned there. As well, the record reflects sufficient breaks between each incident to allow the defendant time to reflect. Moreover, the defendant's statements supported the forming of renewed

intentions. Though the record does not disclose specifically how long each incident lasted, the facts prove that the defendant's conduct was separate in temporal proximity and constituted a new volitional departure in his course of conduct.

*Quintano v. People, supra,* 105 P.3d at 592.

### D. Application

■ Here, the jury found defendant guilty of committing one count of sexual assault on a child by one in a position of trust involving penile contact, and one count involving digital contact. The jury also found defendant guilty of two counts of aggravated incest for committing these same acts. The issue is whether the evidence is sufficient to support a conclusion the digital and penile penetrations were distinct offenses. To resolve this question, we must decide whether the facts in this case fall under *Woellhaf* or *Quintano*. We conclude *Woellhaf* is the applicable precedent.

Each count of sexual assault on a child by one in a position of trust and each count of aggravated incest indicated the charged offense occurred within the same period, November 1, 1998, through December 24, 2002. None of these counts provided a more specific time or date for the offense, and a reference in the counts to "sexual contact" was the only description of defendant's alleged conduct.

To provide a basis for distinguishing between the counts, the prosecution submitted jury verdict forms describing, in the words used by victim, the different kinds of sexual contact to which she was subjected by defendant. The verdict forms for the counts of which defendant was convicted described the offenses as sexual assault on a child by one in a position of trust ("weenie in pee pee on bed"); sexual assault on a child by one in a position of trust ("finger in pee pee"); aggravated incest ("weenie in pee pee on bed"); and aggravated incest ("finger in pee pee").

Victim told at least three people before trial and then testified defendant had subjected her to penile contact. However, the only evidence of digital contact consisted of a single reference victim made during a recorded statement, in which she said defendant touched her vagina when he subjected her to penile contact, suggesting digital contact occurred more than once.

There was evidence indicating penile contact occurred several times. Victim stated she was subjected to such contact every time she went to her father's residence, which was more than five times.

There was evidence indicating sexual contact occurred in different places, because victim said defendant subjected her to penile contact in the bed where she slept and on the couch where he slept in his residence. However, there was no indication penile contact occurred in one of these places and digital contact in the other. There was only evidence they occurred at the same time.

Looking at the evidence in the light most favorable to the prosecution, we conclude the convictions based upon penile contact provided a distinct location for the act, the bed, but the convictions involving digital contact did not. Thus, we conclude there was only a single factual offense, and this case is governed by *Woellhaf*, not *Quintano*.

Here, as in *Woellhaf*:

> [T]he ... convictions for ... [different] types of sexual contact cannot be differentiated as factually distinct offenses precisely because the counts and the evidence do not provide any basis to assess whether the times, locations, volitional departures, or any other factors support separate offenses. Indeed, the lack of detail of the surrounding circumstances within which the contacts occurred left the People with no way to distinguish between the counts other than by type. As such, having decided that the unit of prosecution is not each type of contact, we cannot now determine from the People's designation of the counts by type of contact that there was more than one offense.

*Woellhaf v. People, supra,* 105 P.3d at 219.

Our conclusion is buttressed by the jury's verdicts. The jury acquitted defendant of all counts concerning "weenie in pee pee on couch." The acquittal indicates the jury found insufficient evidence to establish digital contact occurred in a different place than the

penile contact, because victim stated digital contact was always associated with penile contact.

Further, although the jury convicted defendant of two counts of sexual assault on a child by one in a position of trust, the jury did not find he committed this crime as part of a pattern of sexual abuse. This finding indicates a lack of sufficient evidence to establish digital contact occurred at a different time from penile contact, because the jury was instructed that "pattern of sexual abuse" meant "the commission of two or more incidents of sexual assault involving a child when such offenses are committed by an actor upon the same victim."

We therefore determine the evidence here supports the conclusion the two types of sexual contact constituted a single factual offense of sexual assault on a child by one in a position of trust and a single factual offense of aggravated incest. Accordingly, we conclude multiple punishments for the two counts of sexual assault on a child by one in a position of trust and for the two counts of aggravated incest are barred by double jeopardy principles. Therefore, defendant's sentence must be vacated, and the case must be remanded for resentencing. On remand, the trial court shall merge the two convictions for sexual assault on a child by one in a position of trust into a single conviction and the two convictions for aggravated incest into a single conviction and shall resentence defendant accordingly.

Because we conclude defendant's sentence must be vacated on double jeopardy grounds, there is no need to address defendant's contention the sentence also violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

### V. Mittimus

■ Defendant contends, and the People concede, the mittimus in this case incorrectly states he pled guilty to two counts when he was actually convicted by a jury on those counts. On remand, the mittimus should be amended to correct this mistake.

The judgments of conviction for one count of sexual assault on a child for a person in a position of trust and one count of aggravated incest are affirmed. The sentence is vacated, and the case is remanded for resentencing and correction of the mittimus in accordance with the views expressed in this opinion.

Judge MÁRQUEZ and Judge ROTHENBERG concur.