24CA0010 Peo v Salinas 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0010
Adams County District Court No. 21CR1929
Honorable Jeffrey Smith, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Randolph Christopher Salinas,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Welling and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Mulligan Breit LLC, Patrick J. Mulligan, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Randolph Christopher Salinas, appeals the judgment of conviction entered on a jury verdict finding him guilty of sex assault on a child, sex assault on a child — pattern of abuse, sex assault on a child — position of trust, and indecent exposure. We affirm.

## I.    Background

¶ 2    A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3    Salinas and B.M. were in a romantic relationship for approximately four years, living together for three of those years. Both had children from prior relationships. One of B.M.'s children — her daughter and the victim in this case, A.G. — was between ten and fourteen to fifteen years old during B.M. and Salinas's relationship. B.M. and Salinas also had a son together.

¶ 4    Due to B.M.'s work schedule, Salinas often supervised A.G. and dropped her off at school. Over time, Salinas engaged in a series of increasingly sexual behaviors with A.G., including but not limited to,

- sending A.G. a picture of his penis, claiming it was an accident and asking her to not tell her mother;

1

- walking around the home naked or in his underwear, sometimes with his penis erect;

- driving A.G. to sex shops and offering to buy her underwear and a vibrator;

- masturbating in front of A.G. — at times while watching pornography on his phone — although A.G. never saw him ejaculate;

- placing A.G.'s hand on his erect penis and telling her to roll a condom onto it, saying these are things she "need[s] to know" so she is "prepared in the future"; and

- pulling A.G.'s underwear down and touching her vagina and clitoris with a vibrator.

¶ 5 In January 2021, A.G. disclosed Salinas's abuse to her mother, B.M., who immediately took her to a police station. A forensic interviewer, Linda Mikow, later spoke with A.G. about Salinas's conduct.

¶ 6 As relevant to this appeal, A.G., B.M., Mikow, and three law enforcement officers testified for the prosecution at trial. The prosecution also called a generalized expert, Beth Peters, to testify

about sexual abuse dynamics, including the concept of "grooming" victims.[1]

¶ 7 For his part, Salinas denied the allegations. He asserted that B.M. manipulated A.G. into fabricating the allegations to deprive Salinas from seeing his son.

¶ 8 The jury found Salinas guilty on all counts.

¶ 9 On appeal, Salinas contends that the district court erred by admitting (1) improper "vouching" testimony by three witnesses; (2) a witness's testimony regarding prior inconsistent statements by B.M. for the limited purpose of impeachment; and (3) irrelevant and highly prejudicial testimony from multiple witnesses. Salinas also contends that the cumulative effect of these errors requires reversal. We address and reject each contention in turn.

## II.    Vouching

¶ 10 We first address Salinas's contention that the district court abused its discretion by admitting improper vouching testimony from three prosecution witnesses: the generalized expert, Peters; the

---

[1] A generalized expert aims to educate the jury about general concepts or principles without discussing the particular facts of the case. *People v. Cooper*, 2021 CO 69, ¶ 1.

forensic interviewer, Mikow; and Detective Michael Griffith. We also address Salinas's related arguments that apply to Peters only.

### A. Standard of Review and Applicable Law

¶ 11 We review a district court's decision on the admissibility of evidence for an abuse of discretion. *Davis v. People*, 2013 CO 57, ¶ 13. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law. *People v. Scott*, 2021 COA 71, ¶ 23.

¶ 12 Except for Salinas's challenge to the detective's testimony, Salinas's vouching-related contentions are unpreserved. We review preserved trial errors for nonconstitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. Under this standard, we reverse only if a reasonable probability exists that the court's error contributed to the defendant's conviction. *People v. Roman*, 2017 CO 70, ¶ 13. By contrast, we review Salinas's unpreserved contentions for plain error. *See Hagos*, ¶ 14. Plain error is error that is both obvious and substantial. *People v. Burdette*, 2024 COA 38, ¶ 32. We need not decide whether the trial court actually erred if it's clear that the

alleged error wasn't obvious. *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010).

¶ 13    A witness, including an expert witness, may not testify that another witness was telling the truth on a particular occasion. *See Venalonzo v. People*, 2017 CO 9, ¶ 32. Such testimony improperly invades the province of the fact finder. *Id.* This issue often arises in child sex assault cases when the case's outcome turns on the victim's credibility. *Id.* at ¶ 33. Although expert testimony in such cases isn't permitted to bolster the child victim's credibility, an expert may respond to hypothetical questions involving the facts of the case at hand. *See People v. Mintz*, 165 P.3d 829, 831 (Colo. App. 2007). An expert witness may also testify regarding the range of typical demeanors and behavioral traits displayed by a sexually abused child; such testimony assists the jury in understanding the victim's behavior after the incident. *People v. Short*, 2018 COA 47, ¶ 13.

¶ 14    When a party opens the door to otherwise inadmissible evidence, their opponent may then inquire into the previously barred matter. *Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008). "The concept of 'opening the door' represents an effort by courts to

prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression." *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996).

## B. Generalized Expert: Beth Peters

¶ 15     Turning first to Salinas's contention that the district court abused its discretion by admitting Peters's expert testimony, we perceive no basis to reverse.

¶ 16     Without objection by Salinas, the district court recognized Peters as an expert in the "dynamics and impact of sexually abused children." Peters emphasized at the beginning of her testimony that, as a generalized expert, she had no knowledge of the case's specific facts, hadn't spoken to anyone involved in the case, and had no opinion on A.G.'s credibility.

¶ 17     In responding to the prosecutor's questions, Peters testified that certain hypothetical behaviors by perpetrators are consistent with the concept of "grooming" child victims. Peters explained, for example, that grooming can include (1) texting a victim a lewd photograph; (2) walking around naked when the victim is home;

(3) driving a victim alone to a sex shop; and (4) masturbating in front of a victim, even without ejaculating.

¶ 18    According to Salinas, this testimony amounted to improper vouching because it "endorsed" A.G.'s specific allegations. But the prosecutor didn't tie the posed hypotheticals to A.G.'s specific allegations. Moreover, Peters, as a generalized expert, repeatedly disclaimed offering any opinion on the credibility of A.G.'s allegations. Indeed, Peters's testimony that Salinas challenges zeroed in on behaviors typically associated with child sex assault *assailants*, not victims. And although some of the prosecutor's hypotheticals mirrored certain allegations against Salinas, we certainly can't say that permitting Peters to respond to such hypothetical questions constituted obvious error. *See Mintz*, 165 P.3d at 831; *see also Short*, ¶¶ 10, 15 (trial court properly admitted therapist's answers to hypothetical questions based on the circumstances of the case, in part because the testimony didn't focus on the child's truthfulness); *People v. Morrison*, 985 P.2d 1, 5-6 (Colo. App. 1999) (similar); *cf. Short*, ¶¶ 87-89 (Welling, J., specially concurring) (declining to find obvious error in a prosecutor's use of closely tailored hypotheticals because "not only

7

was there no settled authority indicating that such hypotheticals were improper, the limited authority supports a contrary conclusion").

¶ 19    We aren't persuaded otherwise by Salinas's reliance on *People v. Cernazanu*, 2015 COA 122.  In *Cernazanu*, the victim's mother testified that the victim didn't "engage in her typical 'lying' behavior" when she disclosed the defendant's sexual assaults.  *Id.* at ¶ 16. The division concluded that the mother's testimony "necessarily implied" that the victim "was telling the truth on that occasion."  *Id.* In this case, however, Peters's testimony didn't touch on A.G.'s characteristics at all, let alone her truthfulness on a specific occasion.  To the contrary, Peters explained that, as a generalized expert, she had no ability to opine on A.G.'s credibility.

¶ 20    Although placed within the "vouching" section of his opening brief, Salinas raises other challenges to Peters's testimony that aren't directly tied to vouching.  Salinas argues, for example, that Peters usurped the court's and the jury's roles by testifying that "penetration is not the definition of sexual abuse" and "[i]t's not required."  But Peters's statement wasn't expressed as an opinion of the applicable law or legal standards; instead, it arose in the

8

context of her discussion about grooming. *See People v. Baker,* 2021 CO 29, ¶ 32 (setting forth factors that courts should consider in determining whether opinion testimony is admissible under CRE 704). Moreover, the district court correctly instructed the jury (1) on the applicable law and (2) that it could accept or reject an expert's opinions. *See id.* And, consistent with her role as a generalized expert, Peters didn't opine that Salinas had committed the charged offenses, nor did she suggest a "particular likelihood" that he had done so. *Id.*

¶ 21 Finally, we aren't convinced by Salinas's argument that the district court erred by failing to make specific findings on the reliability, relevance, and usefulness of Peters's expert testimony. Salinas didn't object to Peters's expert testimony under CRE 702 or *People v. Shreck,* 22 P.3d 68 (Colo. 2001), so the lack of findings didn't necessarily render her expert testimony inadmissible. *See People v. Martinez,* 2024 CO 69, ¶ 36; *see also Ruibal v. People,* 2018 CO 93, ¶ 13 (explaining that, "*where a proper challenge has been raised,* a trial court 'is required to issue specific findings' as to relevance and reliability under CRE 702" (emphasis added) (quoting *People v. Rector,* 248 P.3d 1196, 1200 (Colo. 2011))); *People in*

*Interest of A.F.*, 2025 COA 76, ¶ 13 n.2 ("When no party objects to the expert testimony, a lack of findings does not necessarily render it inadmissible." (citing *Martinez*, ¶ 36)); *cf. People v. Yachik*, 2020 COA 100, ¶¶ 49, 54 (concluding the trial court erred by failing to make required findings on the admissibility of the prosecution expert's testimony where the defense "raised objections pretrial" and "maintained a continuing objection" during trial).

¶ 22　　Even if findings had been required absent an objection, we discern no substantial error that requires reversal. *See Burdette*, ¶ 32. Colorado courts have previously recognized that generalized expert testimony is admissible to provide the jury with background information on patterns of child sexual abuse and associated behaviors by victims and offenders. *See, e.g., People v. Conyac*, 2014 COA 8M, ¶ 30; *cf. Kutzly v. People*, 2019 CO 55, ¶ 11 (no *Shreck* hearing is required "if Colorado has already properly accepted the basis of the expert's testimony").

### C.　Forensic Interviewer: Linda Mikow

¶ 23　　We reach the same conclusion with respect to Mikow, the forensic interviewer who spoke to A.G. during a recorded interview.

¶ 24     The district court recognized Mikow as an expert in forensic interviewing without objection by Salinas.  During cross-examination, defense counsel asked Mikow about A.G.'s omission from her interview of certain details regarding Salinas's alleged abuse, including A.G.'s failure to mention whether Salinas ejaculated when masturbating in front of her.  The prosecutor followed up on redirect by asking Mikow whether children who have experienced "this kind of trauma" frequently omit details.  Mikow answered, "Yes."  The prosecutor then asked whether A.G.'s omission was "consistent with" other cases that Mikow had encountered.  Mikow replied, "Yeah.  [A.G.] said that things were blurry for her."  Defense counsel didn't object.

¶ 25     Similar to our conclusion regarding Peters's testimony, we detect no obvious improper vouching in Mikow's testimony. Mikow's testimony helped the jury understand "typical demeanor and behavioral traits" of sexually abused child victims, including how they sometimes omit details or delay reporting their abuse. *People v. Relaford*, 2016 COA 99, ¶ 28 (quoting *Mintz*, 165 P.3d at 831).  In addition, Mikow was permitted to explain whether A.G.'s

11

behavior was "consistent with" child victims' typical behavior. *People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011).

¶ 26 Salinas relies on *People v. Marx*, 2019 COA 138, ¶¶ 16-19, to argue that Mikow's testimony served no purpose other than bolstering A.G.'s credibility. We conclude *Marx* is distinguishable. In that case, an expert in sexual assault victim behavior testified that only two to six percent of sexual assaults reported by children and teenagers involve false allegations. *Id.* at ¶ 17. A division of this court concluded that the expert's testimony served no purpose other than to influence the jury's determination of the accuser's credibility. *Id.* at ¶ 19. By contrast, Mikow's expert testimony provided insight into *why* child victims sometimes fail to recall specific details of their abuse — "puzzling aspects" of a child victim's behavior that the jury might not otherwise bring to its evaluation. *People v. Whitman*, 205 P.3d 371, 383 (Colo. App. 2007) (quoting *People v. Aldrich*, 849 P.2d 821, 829 (Colo. App. 1992)). Such testimony is often "helpful and appropriate" in cases involving sexual abuse of children. *Short*, ¶ 14 (quoting *State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984)).

¶ 27 Moreover, even if Mikow's testimony on redirect crept close to improper vouching, we conclude defense counsel opened the door by asking her about A.G. omitting whether Salinas ejaculated when masturbating. The prosecutor's questions on redirect — including asking whether A.G.'s level of detail was "consistent with" other child victims — were fair game given defense counsel's questioning. *See Murphy*, 919 P.2d at 195.

### D. Detective Griffith

¶ 28 Salinas next argues that the district court abused its discretion by admitting Detective Griffith's testimony that A.G. "appeared to be credible" during her forensic interview. But the court sustained Salinas's objection to this testimony and instructed the jury to disregard the detective's statement. In the written jury instructions, the court again directed the jury, "If I told you not to consider a particular statement that was made during the trial, you must not consider it in your deliberations." Salinas didn't seek further relief.

¶ 29 On appeal, Salinas doesn't point to anything in the record suggesting that the jury disregarded the court's curative instructions. Under these circumstances, we presume that the jury

understood and followed the court's instructions. *See People v. Snider*, 2021 COA 19, ¶ 31; *see also People v. Alemayehu*, 2021 COA 69, ¶ 101 (declining to consider a contention of error where the trial court sustained defense counsel's objection and counsel didn't request any additional relief).

¶ 30 Accordingly, we reject Salinas's argument that the district court reversibly erred by admitting improper vouching testimony from Peters, Mikow, and Griffith.

## III. Prior Inconsistent Statements

¶ 31 Salinas contends that the district court erred by instructing the jury that it could consider certain testimony by Salinas's mother regarding B.M.'s prior inconsistent statements only for the limited purpose of impeachment. We conclude that any error in the court's instructions was harmless.

### A. Additional Background

¶ 32 B.M. acknowledged during defense counsel's cross-examination that she had likely made prior disparaging comments about Salinas, including calling him a "broke ass father" and threatening to withhold visitation of their son until Salinas paid child support. But B.M. denied saying that she was "going to

destroy" Salinas or "going to get [him] with [her] daughter." The court released B.M. from her subpoena after her testimony without objection by Salinas.

¶ 33 The defense later called Salinas's mother, T.S., to rebut B.M.'s denial. T.S. testified that she overheard a phone call between B.M. and Salinas in May 2020, during which B.M. used "very abusive" language. When T.S. began to relay what B.M. had allegedly said, the prosecution objected based on hearsay. At a bench conference, defense counsel argued that T.S.'s testimony was admissible both for impeachment purposes and for its truth as a prior inconsistent statement. The court sustained the prosecution's objection in part, ruling that it would admit T.S.'s testimony for the limited purpose of impeachment. T.S. then testified that B.M. told Salinas on the phone that she "was going to destroy him using her daughter." The court instructed the jury that it could consider T.S.'s last answer for the limited purpose of assessing B.M.'s credibility.

¶ 34 During defense counsel's redirect, T.S. testified that B.M. repeated her threats in a second phone call to Salinas in November 2020. At the prosecution's request, the court again instructed the

jury that it could consider T.S.'s answer for the limited purpose of assessing B.M.'s credibility.

### B. Standard of Review and Statutory Framework

¶ 35    As before, we review the district court's decisions on the admissibility of evidence for an abuse of discretion. *Davis*, ¶ 13. Because Salinas preserved his argument before the district court, we review his contention for nonconstitutional harmless error. *See Hagos*, ¶ 12.

¶ 36    Section 16-10-201, C.R.S. 2025, governs the use of prior inconsistent statements as substantive evidence in criminal trials. *People v. Salas*, 2017 COA 63, ¶ 33. Under the statute, competent evidence regarding a witness's prior inconsistent statement may be admissible as substantive evidence that establishes a fact, not just for impeachment purposes, provided two conditions are met: "(a) [t]he witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and (b) [t]he previous inconsistent statement purports to relate to a matter within the witness's own knowledge." § 16-10-201(1); *see also Salas*, ¶ 33 (noting that section 16-10-201 "relaxes" CRE 613's foundational requirements

for impeachment by prior inconsistent statements "in some respects," but that the rule and the statute don't conflict).

## C. Analysis

¶ 37 Salinas argues that the district court should have admitted T.S.'s testimony about B.M.'s prior inconsistent statements as substantive evidence and not merely for impeachment purposes. The People counter that defense counsel failed to give B.M. an adequate "opportunity to explain or deny" her prior statements and that she was no longer available after her testimony. § 16-10-201(1)(a). Analogizing to CRE 613, the People assert that defense counsel identified B.M.'s alleged prior statements — that B.M. would "destroy" Salinas and "get [him] with [her] daughter" — but neglected to call B.M.'s attention to the particular time and occasion when she made those statements. *See* CRE 613.

¶ 38 We need not decide whether defense counsel provided B.M. with an adequate opportunity to explain or deny her prior statements because, even if he did, any error in the court's limiting instructions was harmless. *See People v. Kern*, 2020 COA 96, ¶¶ 7, 18. B.M.'s prior inconsistent statements bore on her credibility — the very purpose for which the court admitted T.S.'s testimony.

17

Salinas acknowledges as much in his opening brief, saying that T.S.'s testimony was "critical" to show B.M.'s "motive and bias" as the victim's mother. *See Margerum v. People*, 2019 CO 100, ¶ 10 (explaining that unearthing a witness's "bias or an ulterior motive" are methods of attacking the witness's credibility).

¶ 39 Moreover, even putting aside T.S.'s testimony, Salinas still managed to raise a serious question about B.M.'s credibility. *See People v. Komar*, 2015 COA 171M, ¶ 57. In response to defense counsel's questioning, B.M. admitted, among other things, that (1) her relationship with Salinas was "consistently rocky"; (2) the two argued "a lot" over infidelity and money; (3) she had made prior allegations of domestic violence against Salinas that a jury disbelieved, resulting in Salinas's acquittal; and (4) she threatened to withhold visits with Salinas's son if he didn't pay child support. Armed with this testimony, defense counsel argued in closing that B.M. had a motive to fabricate allegations against Salinas and knew how to use the court system to her advantage. Against this backdrop, we perceive no reasonable probability that any error in the court's limiting instructions contributed to Salinas's conviction. *See Roman,* ¶ 13.

¶ 40    *United States v. McGirt*, 71 F.4th 755 (10th Cir. 2023), relied

on by Salinas, doesn't require a different conclusion.  For one,

*McGirt* isn't binding on us.  *See Hill v. Thomas*, 973 P.2d 1246, 1255

(Colo. 1999), *aff'd sub nom.*, *Hill v. Colorado*, 530 U.S. 703 (2000).

For another, its facts are distinguishable.  In *McGirt*, the trial court

instructed the jury that it could consider prior inconsistent

statements from three government witnesses, including the child

victim, solely for impeachment.  71 F.4th at 758.  But unlike this

case, the witnesses' prior inconsistent statements included the

circumstances of the defendant's actual alleged sexual abuse.  *See

id.* at 761-67.  In reversing the defendant's conviction, the Tenth

Circuit explained that the trial court's erroneous limiting

instruction wasn't harmless because the defendant had attempted

to use the witnesses' prior statements as substantive evidence to

create an "alternate narrative" of the alleged events.  *Id.* at 769.  The

witnesses' prior statements established, among other things, that

the defendant lacked the opportunity to sexually abuse the victim.

*Id.*

¶ 41    Here, however, B.M.'s prior inconsistent statements were

limited to her hostile arguments with Salinas.  They bore primarily,

if not solely, on B.M.'s credibility.  Such arguments, even if believed by the jury over B.M.'s denials, didn't establish an "alternate version of events."  *Id.* at 770.

¶ 42    Accordingly, we conclude that any error in the district court's limiting instructions was harmless.

## IV.    Irrelevant and Highly Prejudicial Evidence

¶ 43    Salinas contends that the district court abused its discretion by admitting irrelevant and highly prejudicial testimony from multiple witnesses.  We disagree.

### A.    Standard of Review and General Principles

¶ 44    Once again, we review the district court's decisions on the admissibility of evidence for an abuse of discretion.  *Davis*, ¶ 13. Except for his challenge to Detective Griffith's testimony, Salinas didn't preserve his challenges by objecting to the witnesses' testimony at trial, thus limiting our review to plain error.  *See Hagos*, ¶ 14.

¶ 45    Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  All relevant evidence is generally

admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. CRE 402-403; *People v. Salas*, 902 P.2d 398, 401 (Colo. App. 1994).

B.    B.M.

¶ 46    Salinas challenges three portions of B.M.'s testimony as irrelevant and highly prejudicial.

¶ 47    First, Salinas says that B.M. improperly relayed her prior allegations of domestic violence against Salinas. But B.M. also explained that a jury acquitted Salinas of those charges. Moreover, defense counsel first raised B.M.'s prior domestic violence allegations in opening statements, using the jury's acquittal to cast doubt on B.M.'s credibility. Salinas therefore opened the door to the prosecution's later questions about B.M.'s prior allegations. *See People v. Davis*, 312 P.3d 193, 196 (Colo. App. 2010) (a party who raises a subject in opening statement opens the door for the opposing party to admit evidence on the same subject), *aff'd*, 2013 CO 57.

¶ 48    Second, Salinas complains that B.M. told the jury that she "put [A.G.] in therapy" after A.G. disclosed Salinas's offenses. We can't say that the district court erred, let alone plainly erred, by

admitting this testimony. Evidence that A.G. attended therapy after disclosing the alleged sexual assaults tended to corroborate that she "suffered a traumatic event, which relates directly to whether the events she described even occurred." *People v. Mena*, 2025 COA 14, ¶ 21.

¶ 49 Third, Salinas challenges B.M.'s testimony on redirect (1) stating that Child Protective Services issued an "emergency" protection order that prevented Salinas from contacting B.M.'s children and (2) describing Salinas as "[o]versexual." But again, defense counsel opened the door to these subjects. *See Murphy*, 919 P.2d at 195. Defense counsel asked B.M. during cross-examination about B.M.'s prior domestic violence allegations and the resulting protection order that prevented Salinas from contacting his son.[2] Defense counsel also asked B.M. about her and Salinas's sex life, which she described as "robust," and about instances when Salinas sent B.M. videos of him masturbating. Based on this line of questioning on cross-examination, we discern

---

[2] Salinas takes issue with B.M.'s description of the protection order as an "emergency" order. But he doesn't develop this argument, so we decline to address it. *See People v. Liggett*, 2021 COA 51, ¶ 53, *aff'd*, 2023 CO 22.

no error, plain or otherwise, in the court's admission of B.M.'s testimony on redirect. *See id.*

### C. Peters

¶ 50 Peters, the generalized expert, testified that (1) a child victim might not remember the details of their sexual assault due to "disassociation processing" and (2) grooming behaviors can include building likability by providing the child with money or alcohol. Departing from his prior argument that Peters's hypotheticals were *too* tailored to A.G.'s specific allegations, Salinas now argues that these portions of Peters's testimony improperly inflamed the passions of the jury because they bore *no* relationship to the allegations against him.

¶ 51 Salinas's argument ignores, however, Peters's role as a generalized expert. Because generalized expert testimony seeks to inform the jury about generic concepts or principles without knowledge of the specific facts, parts of the testimony will inevitably not be connected to the case. *People v. Cooper*, 2021 CO 69, ¶ 53. "If the generalized expert testimony's logical connection to the factual issues is sufficient to be helpful to the jury without running

afoul of CRE 403, the testimony fits the case." *Id.* at ¶ 5. The required fit is necessarily flexible. *Id.* at ¶ 53.

¶ 52     We conclude Peters's testimony satisfied this standard. Mikow, the forensic interviewer, testified that A.G. couldn't recall some of the details of Salinas's sexual assaults. Peters later explained that a child's lack of memory may result from "disassociation processing," during which the victim may "take [their] consciousness somewhere else" as a survival method during a threatening event. The prosecution therefore established a sufficiently logical connection between Peters's testimony about disassociation processing and the facts surrounding A.G.'s memory.

¶ 53     The same is true of Peters's testimony about grooming behaviors. The prosecution elicited evidence that Salinas groomed A.G. in various ways, and Peters's testimony sought to educate the jury about the concept of grooming by discussing examples. Some mirrored the prosecution's allegations against Salinas. Others didn't. But again, a generalized expert's testimony need not perfectly fit the facts of the case in its entirety. *Id.* at ¶ 85 ("[T]here will almost always be some testimony that has no logical relation to the facts of the case."). The prosecution's evidence that Salinas

24

groomed A.G. sufficiently established the required logical connection.

¶ 54    Salinas challenges two other portions of Peters's testimony as irrelevant and highly prejudicial.  First, Salinas says that Peters improperly compared him to renowned sex offender Larry Nassar, a former Olympic team physician who sexually assaulted many female gymnasts.  In support, Salinas relies on *Harris v. People*, 888 P.2d 259, 265 (Colo. 1995), where the supreme court reversed a defendant's conviction because the prosecutor in closing argument repeatedly compared the defendant to Saddam Hussein, characterizing both as "thug[s]" and "bull[ies]."

¶ 55    But unlike the situation in *Harris*, neither the prosecution nor Peters directly compared Salinas to Nassar.  The reference to Nassar occurred near the end of the prosecutor's redirect examination of Peters, unfolding as follows:

> [Prosecutor:] What about masturbating in front of the child in odd places such as a car?
>
> [Peters:] Location does not matter.
>
> [Prosecutor:] Location does not matter[?]
>
> [Peters:] It really doesn't.
>
> [Prosecutor:] Why not?

[Peters:] I'm thinking of a video I watched when I was teaching at the university. The video interviewed sex offenders in prison. And they discussed oftentimes manipulating the victim to the point of secrecy where they could molest them when other people were present. They talked about molesting a little girl in the backseat when her parents were driving.

[Prosecutor:] Would a famous example be Dr. Larry Nassar, the doctor who treated all the gymnastics children?

[Peters:] Yes. Even though there was a parent in the room, the parent is not considering that . . . kind of touch [to] be inappropriate or sexually abusive.

¶ 56    As is evident from the context above, Peters's brief adopted reference to Nassar was in the context of making the larger point that location doesn't necessarily matter when an abuser has successfully built trust by grooming their victim. Peters explained that, in the case of Nassar, a parent was often present when the abuse occurred but didn't consider Nassar's actions "inappropriate or sexually abusive." Because Peters's adoption of the prosecutor's reference to Nassar was in the context of providing additional explanation about the concept of grooming and didn't draw a direct comparison between Nassar and Salinas — indeed, as a generalized expert she had no knowledge of the specific accusations against

Salinas — we perceive no obvious error in the court's failure to intervene and strike the testimony. *See People v. Ujaama*, 2012 COA 36, ¶ 42 ("To qualify as plain error, the error must be one that 'is so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." (citation omitted)).

¶ 57 To the extent Salinas argues that this portion of Peters's testimony lacked a sufficiently logical connection to the facts at hand, we disagree. Salinas attacked the credibility of A.G.'s accusations, in part, by characterizing some of the locations of the alleged assaults as "absurd." Defense counsel argued, for example, that an adult man would never exit his townhome and walk to his vehicle in a densely populated area "with his penis hanging out." Given these arguments by the defense, Peters's testimony about location not mattering bore a sufficiently logical connection to the factual issues in Salinas's case. *See Cooper*, ¶ 52.

¶ 58 Second, Salinas asserts that Peters improperly inflamed the passions of the jury by mentioning her past "negative experiences" with defense investigators. But Peters's statement, fleeting as it was, arose on redirect after defense counsel cross-examined her about testifying only for the prosecution. When asked on redirect

whether she would be willing to speak with the defense, Peters clarified that she prefers to share the "totality" of her testimony in the courtroom — and also limits her conversations with prosecutors — due to past negative experiences when her pretrial statements were misrepresented. Because defense counsel opened the door to Peters's alleged bias by implying that she favored the prosecution, we can't say that the district court abused its discretion by admitting Peters's clarifying testimony on redirect. *See Murphy*, 919 P.2d at 195.

### D.    Detective Neihart

¶ 59    Next, Salinas challenges four portions of Detective Matt Neihart's testimony. Some of his arguments go beyond relevance and undue prejudice under CRE 402 and 403. He argues that Detective Neihart

- provided irrelevant and highly prejudicial testimony by saying that the court's mandatory protection order prevented Salinas from contacting anyone under the age of eighteen;

- violated Salinas's right against self-incrimination by describing Salinas's testimony at an earlier court hearing, despite Salinas choosing not to testify at trial;

- improperly testified that Salinas's earlier testimony — without specifying *what* testimony — wasn't "consistent with" testimony by the prosecution's witnesses at trial; and

- offered an improper expert opinion by saying that Salinas's explanation that pornography "would just kind of pop up" on his cell phone wasn't consistent with his understanding of "how browsing on cell phones works."

¶ 60 We reject these contentions as follows:

- Salinas opened the door to Neihart's testimony about the mandatory protection order by asking B.M. earlier whether the court issued a protection order when she initiated "this report to the Westminster police." *See Murphy*, 919 P.2d at 195.

- Absent a showing of involuntariness (which Salinas doesn't argue), a defendant's former testimony is generally admissible at a later trial without running afoul

of the defendant's right against self-incrimination. *See People v. Arrington*, 682 P.2d 490, 492-93 (Colo. App. 1983).

- Salinas's third challenge to Neihart's testimony in the opening brief lacks specificity and consists of just two sentences. His reply brief doesn't address the issue at all. We therefore decline to address it. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a perfunctory or conclusory manner).

- The prosecution asked Neihart about his "everyday understanding of how browsing on cell phones work[s]." Because Neihart's answer fell within an ordinary person's experience and knowledge, it didn't constitute improper expert testimony. *See Venalonzo*, ¶ 23.

## E. Detective Griffith and Officer Daversa

¶ 61 Finally, Salinas challenges (1) Detective Griffith's testimony that A.G. "appeared to be credible" and (2) Officer Nicholas Daversa's testimony that he told B.M. not to allow Salinas to have contact with their children.

¶ 62    We have already rejected Salinas's challenge to Detective Griffith's testimony because the court sustained the defense's contemporaneous objection and instructed the jury to disregard the testimony. As to Officer Daversa's testimony, Salinas's entire argument on this issue in his opening brief again consists of less than two sentences, so we don't address it. *See Wallin*, 167 P.3d at 187.

## V.    Cumulative Error

¶ 63    Salinas contends the cumulative effect of the district court's errors violated his right to due process and a fair trial. The cumulative error doctrine requires reversal when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (alteration in original) (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)).

¶ 64    Here, we have presumed one error — the limiting instruction discussed in Part III — but determined it was harmless. We have also rejected two plain error challenges — the use of tailored hypotheticals discussed in Part II.B and the reference to Nassar discussed in Part IV — because even if the court erred, neither error

was obvious. Considering the combined effect of these presumed errors under the rubric of cumulative error, we aren't persuaded that, taken together, they substantially prejudiced Salinas's right to a fair trial. *See Conyac*, ¶ 152; *see also People v. Vialpando*, 2022 CO 28, ¶¶ 40-46 (concluding five errors viewed in the aggregate didn't constitute cumulative error that deprived the defendant of a fair trial).

¶ 65 Accordingly, the cumulative error doctrine doesn't warrant reversal.

## VI. Disposition

¶ 66 We affirm the judgment.

JUDGE WELLING and JUDGE GOMEZ concur.